IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

**DENNIS E. DRIVER**                                                                                     **PLAINTIFF**

**V.**                                       **NO: 3:20CV123-M-S**

**BRIAN L. DAVIS, DAVIS LAW FIRM, PLLC**
**and ERVIN R. BENNETT**                                               **DEFENDANT**

## ORDER

This cause comes before the court on the motion of defendants to dismiss this case, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff Dennis E. Driver has responded in opposition to the motion, and the court, having considered the memoranda and submissions of the parties, concludes that plaintiff's federal claims should be dismissed with prejudice and that it should decline to exercise supplemental jurisdiction over his remaining state law claims. Those state law claims will therefore be dismissed without prejudice to their re-filing in state court.

This is, *inter alia*, a Fair Debt Collections Practices Act case arising out of what plaintiff alleges to have been an unlawful foreclosure. In a prior order staying this case, this court indicated that it was inclined to grant defendants' motion to dismiss, writing that:

> Defendants have filed a motion to dismiss the complaint filed by the *pro se* plaintiff in this case, and this court's initial review of the motion suggests that it will eventually be sustained. Plaintiff has followed his complaint with what this court regards as highly suspect motions to strike the appearance of defendant's counsel in this case and for sanctions against that same attorney. The content and tone of plaintiff's filings do not, to say the least, inspire confidence in the validity of this action, which seeks damages arising out of an allegedly unlawful foreclosure. This court has dealt with a number of frivolous actions which involve facts and legal theories similar to the ones in this case, and it suspects that this one may be similarly frivolous. This court will rule upon the motion to dismiss in due course, but, given the stream of filings from plaintiff, it concludes that this case should be stayed regarding all matters other than the motion to dismiss. Any other filings are subject to being terminated without prior notice from this court.

[Docket entry 12 at 1]. Following this court's observations stated above, plaintiff filed a motion seeking its recusal, alleging that it had demonstrated bias against him. This court denied the motion, noting that a judge's opinions are not extrajudicial (and thus not the proper basis of a recusal) if they were "formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings." *Liteky v. United States*, 510 U.S. 540, 555, 127 L.Ed.2d 474 (1994).

This court's initial impressions regarding this case were informed by its experience with (and awareness of) other foreclosure cases filed in this district by *pro se* litigants, which have tended to follow a similar pattern. Namely, these cases have generally sought to halt pending foreclosures or to obtain damages for those foreclosures after the fact based on what have generally proven to be either misinformed or willfully inaccurate descriptions of the law. *See, e.g. Smith v. Wells Fargo Home Mortgage*, 3:15-cv-00092, *Thomas et al v. US Bank et al*, 2:12-cv-00121, *Ellis Jr. Estate v. U.S. Bank National Association*, 3:17-cv-00077, *Booker v. First American Mortgage Trust et al*, 3:13-cv-00070, *Taylor v. Ocwen Loan Servicing*, LLC, No. 2:12–cv–107; *Smith v. Bank of America, N.A.,* No. 2:11-CV-120, *Rupert v. U.S. Bank*, N.A., 1:17-cv-00090. It appears to this court that "word has gotten out" among *pro se* litigants that filing a federal lawsuit may be a way of delaying or voiding a foreclosure in this state, and it has dealt with a number of such cases which appeared to have no real purpose other than to delay and harass the opposing side. Indeed, this court cannot recall a foreclosure case in which a *pro se* plaintiff was eventually able to assert a valid federal claim.

This court notes that Mississippi state law provides homeowners with ample protections against unlawful foreclosures, and it admits to a certain degree of skepticism when it is confronted with yet another *pro se* case attempting to either stop or nullify a foreclosure on suspect federal

law grounds. At the same time, this court is well aware that each case is entitled to be considered on its merits, and this case is no exception. With this caveat, this court will proceed to a discussion of the facts and law pertaining to this case.

In his complaint, plaintiff alleges that attorney Brian Davis, acting on behalf of his client Ervin Bennett, foreclosed upon his house without giving him the full amount of time provided by law to make his mortgage payments current. In the form complaint used by *pro se* litigants, plaintiff was specifically asked to cite the bases upon which he asserted that federal question jurisdiction was present, and he responded that:

> The defendant violated Federal laws and provisions defined in 15 U.S.C. § 1692 false misrepresentation in the course of collecting a debt. The defendant wrongfully foreclosed on the plaintiff and also violated the Truth in Lending Act, Regulation Z, 12 CFR 226.23, breached the contract and slandered the title. Plaintiff also brings his claim forward for slander of credit and infliction of emotional distress. The defendant in this case is a debt collector. The defendant violated the FDCPA, including misrepresentation, fraud, harassment, unfair means, and deception to collect a debt. Plaintiff was never provided with any type of due process in this matter.

[Complaint at 3].

Thus, there are two federal claims plainly asserted in this case: a Truth in Lending Act claim, and a Fair Debt Collection Practices Act claim.[1] In his response to the motion to dismiss, plaintiff appears to concede his TILA claim, writing that:

> 4. This illegal foreclosure was a result of a breach of contract on the defendant's behalf. It has nothing to do with the truth in lending act or TILA. The plaintiff is contesting the illegal procedures used by defendant to foreclose on the plaintiff's home, and not following any rules stated on the deed of trust.

---

[1] This court notes that, while plaintiff did make reference to "due process" violations in his complaint, it is well settled that the due process clause only regulates governmental, not private, conduct. *See, e.g. United States v. Morrison,* 529 U.S. 598 (2000). Neither of the defendants in this case are governmental entities.

3

[Plaintiff's brief at 2]. While this court agrees that this case has nothing to do with the Truth In Lending Act, the fact remains that plaintiff asserted in his complaint that "[d]efendant wrongfully foreclosed on the plaintiff and violated the Truth In Lending Act." [Complaint at 3]. While this court understands that plaintiff is a *pro se* litigant entitled to a certain degree of leniency, any litigant necessarily loses credibility when he or she asserts jurisdiction based on the supposed existence of a federal claim which he subsequently admits has nothing to do with the case. At any rate, even assuming that plaintiff has not outright conceded his TILA claim, he has certainly failed to respond to defendants' meritorious arguments in favor of its dismissal, and that claim will therefore be dismissed.

      This court now turns to plaintiff's FDCPA claim. Defendants seek the dismissal of this claim, given that, they allege, neither of them are "debt collectors" subject to the provisions of the FDCPA. This court agrees. Subject to certain limitations, a "debt collector" is defined under the FDCPA as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. §1692a(6) (emphasis added). This court's research indicates that law firms can, in fact, be deemed debt collectors under the FDCPA, but only if the "principal purpose" of their practice is debt collection. In a 1992 decision, the Fourth Circuit held that the attorney in that case did, in fact, meet the definition of "debt collector" writing that:

> We agree with the district court's conclusion that the "principal purpose" of Jones' business was the collection of debts. Deposition testimony revealed that at least 70–80% of Jones' legal fees were generated in relation to legal work performed toward the collection of debts. Equally persuasive is the district court's conclusion that Jones regularly attempted to collect debts "indirectly," as outlined in the second prong of the "debt collector" definition. The "regularity" is shown by the sheer volume of Jones' business. Jones filed approximately 4,000 warrants per year

4

>between 1983 and 1987, and while the number declined in recent years, the practice continued to constitute a significant portion of his business.

*Scott v. Jones*, 964 F.2d 314, 316 (4th Cir. 1992).

In this case, by contrast, Davis asserts in his motion to dismiss that he "practices almost exclusively in the areas of civil litigation, wills and estates, and some real estate closings" and that he "does not engage in the practice of debt collection or foreclosure, and on rare occasion accepts a foreclosure from individual clients who are non-institutional lenders." [Defendant's brief at 2]. It is unclear to this court whether Davis' factual representations in this regard may validly be considered in the Rule 12(b)(6) context, and, out of an abundance of caution, it will focus instead upon what plaintiff alleges to have been the bases for Davis' status as a debt collector.

Plaintiff's complaint includes no factual allegations which would support a conclusion that debt collection was a sufficiently large part of Davis' practice to render him a "debt collector" within the meaning of the FDCPA. Moreover, in his response to the motion to dismiss, plaintiff merely asserts that Davis "is a debt collector as he admitted in two prior letters. See Exhibit A and G." Plaintiff thus asserts that "Exhibits A and G" support his FDCPA claim, but this court does not agree. This court has reviewed the exhibits in question, and Davis merely asserts in letters dated March 17, 2020 and March 20, 2020 that "[t]his firm is attempting to collect a debt." [See Exhibits A and G]. Clearly, however, the fact that Davis admitted that he was attempting to collect a debt *in this particular case* does not mean that the "principal purpose" of his law firm is debt collection. While this court will give plaintiff the benefit of the doubt that, as a non-attorney, he genuinely believed that Davis' act of collecting a debt in this case was sufficient to implicate the provisions of the FDCPA, the above-cited authority makes it clear that this is not the case. It thus seems clear that plaintiff's FDCPA claim is based upon a mistaken understanding of the scope of this federal statute, and it will therefore be dismissed.

5

This court has thus addressed, and dismissed, the TILA and FDCPA claims arising from the only two federal statutes cited by plaintiff in support of his assertion of federal jurisdiction in this case. Nevertheless, in the interests of thoroughness, this court has conducted its own research regarding an additional reference to "federal law" set forth in plaintiff's complaint, wherein he alleged that:

> Dennis Driver was served with notice of default on March 17, 2020, then eight days later a foreclosure was started on March 25, 2020; I wasn't given 30 days due process "as required by law." I was only 60 days behind when the foreclosure started. Federal law states "beginning in 2014" that a resident has to be at least 120 days behind in the state of Mississippi.

[Complaint at 4]. Plaintiff provided no citation in his complaint to what this unspecified 2014 law might be, but this court's research suggests that he is likely referring to the Real Estate Settlement Procedures Act (RESPA). A 2014 amendment to RESPA prohibits a "loan servicer" from "mak[ing] the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process unless" the "borrower's mortgage loan obligation is more than 120 days delinquent," and this appears to be the federal law indirectly referenced by plaintiff. *See* 12 C.F.R. § 1024.41(f)(1)(i).

While plaintiff is thus correct that federal law, in the form of RESPA, provides a 120-day limitation upon foreclosures, that limitation only applies to "loan servicers." Under RESPA, a "loan servicer" is defined as "the person responsible for servicing of a loan." 12 U.S.C. § 2605(i)(2). RESPA defines "servicing" of a loan as "receiving any scheduled periodic payments from a borrower pursuant to the terms of any loan ... and making the payments of principal and interest and such other payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan." 12 U.S.C. § 2605(i)(3).

This court's review of federal authority in this context indicates that the term "loan servicer" has been applied quite narrowly. For example, a Pennsylvania bankruptcy court wrote in a 2007 decision that:

> At oral argument held on those motions, the parties all agreed that First NLC was the loan originator and original holder of the note and mortgage, JP Morgan is the loan assignee from First NLC, and Litton is simply the loan servicer. Based upon that understanding, the plaintiffs conceded that Count II should be dismissed against defendants First NLC and JP Morgan, as their RESPA claim was applicable only to loan servicers such as Litton.

*In re Hopkins*, 372 B.R. 734, 739–40 (Bankr. E.D. Pa. 2007). Similarly, a Missouri district court wrote in a 2014 decision that:

> Numerous courts have held that RESPA's notice requirements do not apply to trustees. *See, e.g., Jacobson v. Balboa Arms Drive Trust No. 5402 HSBC Financial Trustee,* 2011 WL 2784126, at *7 (S.D.Cal. Apr.4, 2011) ("It is clear from the plain language of the statute that Trustee Corps, as trustee on the Deed of Trust, is not bound by § 2605's disclosure requirements. Therefore, no RESPA cause of action can be stated against Trustee Corps for failing to notify Plaintiffs of the Substitution of Trustee.")

*Stricklin v. Litton Loan Servicing, L.P.*, 2014 WL 2644083, at *2 (E.D. Mo. June 13, 2014). *See also Gomez v. Wells Fargo Home Mortg.*, 2011 WL 5834949, at *3–4 (N.D. Cal. 2011) (concluding that trustee on the deed of trust was not a "servicer" under RESPA).

It seems clear that, in this case, Davis was not a "loan servicer" under RESPA since he was not hired to "receiv[e] any scheduled periodic payments" under the terms of the mortgage. Rather, Davis is simply a local attorney who was hired to help collect the debt on the mortgage after plaintiff became delinquent on his payments. This court's research suggests that RESPA presents a complex regulatory scheme, and it would be quite unreasonable to impose its duties upon individuals such as Davis who are not professional loan servicers and thus have no reason to be aware of federal regulations which apply to those companies which engage in that business. There is similarly no argument that defendant Bennett, who hired Davis to collect on the delinquent loan,

7

is a "loan servicer." It is thus apparent that, if plaintiff had chosen to clearly assert a RESPA claim in his complaint, then it would have been without merit.

This court therefore concludes that all of plaintiff's federal claims in this case lack merit, and it is thus apparent that, like the vast majority of foreclosure cases which come before it, this is a matter which should have been filed in state court. It should be noted that plaintiff does allege state law claims, and, significantly, defendants do not seek for this court to address those claims on their merits. Rather, defendants seek for this court to decline to exercise supplemental jurisdiction over those state law claims after dismissing his federal claims, and this court concludes that this request is an appropriate one.

In a case such as this one, where all federal claims are dismissed prior to trial, 28 U.S.C. § 1367(c)(3) grants this court discretion to decline to exercise supplemental jurisdiction over the remaining state law claims. Indeed, the Fifth Circuit has noted that the "general rule favor(s) dismissal of state claims when the federal claims to which they are pendent are dismissed." *See Guzzino v. Felterman*, 191 F.3d 588, 595 (5th Cir. 1999). This court concludes that it should follow the general rule in this case. In so concluding, this court notes that § 1367(c) provides that:

> The district courts may decline to exercise supplemental jurisdiction [if] (1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

The four § 1367(c) factors are thus listed in the disjunctive, which means that only one of them need be met in order to grant a district court discretion to decline to exercise supplemental jurisdiction. In addition to these statutory factors, federal law also requires consideration of the "common law factors [of] judicial economy, convenience, fairness, and comity" in deciding

8

whether to exercise supplemental jurisdiction. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988).

In the court's view, the statutory factors, as well as the *Cohill* considerations, support declining to exercise supplemental jurisdiction in this case. With regard to the first § 1367 factor, this court concludes that the state law claims in this case involve at least potentially difficult issues of state law which are of local, rather than federal, concern. In so stating, this court notes that plaintiff is seeking to hold an attorney liable for his work in assisting in a foreclosure, and this fact pattern may give rise to potentially difficult issues of state law. Moreover, this court regards comity considerations as being very important in the foreclosure context, since Mississippi courts have a strong interest in being able to litigate foreclosure matters in a timely and efficient manner, without undue interference from federal courts. With regard to the second § 1367(c) factor, this court concludes that state law claims predominate in this case, since it is, at its heart, a simple contract and foreclosure case which plaintiff has unsuccessfully sought to transform into a federal lawsuit. Finally, this court concludes that the comity factors discussed above constitute "exceptional circumstances" within the meaning of the fourth § 1367(c) factor, and they likewise support a conclusion that the *Cohill* factors are met. Thus, this court concludes that multiple § 1367(c) factors support declining to exercise supplemental jurisdiction over this case, even though only one of them is required in order to do so.

This court will therefore decline to exercise supplemental jurisdiction over plaintiffs' state law claims, and they will be dismissed without prejudice. Since plaintiff is not an attorney, this court will advise him that this means that he can still assert his state law claims against defendants, but he must do so in state court, within the time periods established by law. In this vein, this court notes that § 1367(d) contains a tolling provision which provides that:

> (d) The period of limitations for any claim asserted under subsection (a), and for any other claim in the same action that is voluntarily dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

Thus, the time during which this matter was pending in federal court will not count against plaintiff as it relates to the statute of limitations on his state law claims.

In light of the foregoing, it is ordered that plaintiff's federal claims in this case are **DISMISSED WITH PREJUDICE**, and his state law claims are **DISMISSED WITHOUT PREJUDICE** to their being re-filed in state court.

A separate judgment will be entered this date, pursuant to Fed. R. Civ. P. 58.

**IT IS SO ORDERED,** this, the 26th day of August, 2020.

/s/ Michael P. Mills
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF MISSISSIPPI**